THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* EDUARDO PANTOJA AGUAYO, Defendant and Appellant.

No. CR-68-15.        Decided April 30, 1969.

*Mario A. Rodríguez* for appellant. *Rafael A. Rivera Cruz, Solicitor General, Peter Ortiz, Acting Deputy Solicitor General,* and *Lolita Miranda, Assistant Solicitor General,* for The People.

PER CURIAM: For having caused death to his wife Matilde Figueroa Salas, appellant, Eduardo Pantoja Aguayo, was convicted of murder in the second degree. The facts are simple. One night Matilde returned to the marital domicile, a humble little house in a ward of Cataño, at about nine o'clock in the night, accompanied by the witness, Mrs. Celenia Matta Ortiz. Matilde went into the only bedroom; her husband, who had taken some drinks, was standing at the door that led from the living room to the bedroom. Celenia said graphically: "There, without any reason, he gave her two blows", one on the left side, and the other on the abdomen. At the first blow, the victim drew back some steps. The defendant followed her and gave her the second blow. There was not any discussion, they just spoke in a low voice, seconds before the attack. She moaned. The defendant went to sleep.

The blows caused the victim—a weak person, "undernourished", said the pathologist who performed the autopsy—a rupture of the spleen and of the left kidney. A surgical operation was performed, but she developed acute peritonitis, which caused her death.

(1) When the trial judge finished giving instructions to the jury, the prosecuting attorney requested "possible instructions on the offense of involuntary manslaughter"; the magistrate denied the petition because he considered such instructions contrary to law. The defense joined the request of the prosecuting attorney on the ground that the evidence was susceptible of being interpreted as a death caused as a result of the commission of an unlawful act which is not a felony. The judge answered: "That entails malice. If he committed assault and battery there must be an inference of malice and in that case there is no involuntary manslaughter because manslaughter is the unlawful killing without malice and I con-

sider herein that if this person had not died, this would have been assault and battery only. There is no reason to conclude that this is involuntary manslaughter because malice has been involved." The refusal to transmit the requested instructions has been assigned as an error.

In *People* v. *Figueroa*, 80 P.R.R. 317 (1958), we referred to the fact that in involuntary manslaughter death is caused without the intent to kill, and we held, after considering the specific facts involved, that to strike a single blow with the fist on the chest of a healthy adult, and in ordinary circumstances cannot be regarded dangerous, or susceptible of producing death, and therefore, a homicidal intent cannot be inferred therefrom. We added, at page 323:

"The inference of a homicidal intent is justified when a blow with the fists is inflicted brutally, violently, and viciously on a vital and delicate part of the human body; when the assailant takes advantage of the indefenselessness of the victim and of his corpulence over him, and punishes him with extreme cruelty in reckless disregard of the human security, or in such manner that the natural, ordinary, and probable result is the death of the fellow creature injured. In these cases the hands and the feet are classed as a deadly weapon."

When we referred to the element of malice aforethought, we said in *People* v. *Túa*, 84 P.R.R. 37, 51 (1961) that:

"Malice aforethought is an element *of fact* to be determined by the jury, but it being a mental or subjective ingredient, where the deliberate intention of unlawfully taking the life is not manifested, the jury is free to infer or deduce the same as a fact from the other acts or circumstances surrounding the perpetration of the death or connected therewith, after being instructed in pursuance of law that malice denotes a wrongful and intentional act, *without just cause or excuse,* to the prejudice of another."

We agree with the trial judge that the evidence did not call for instructions on the offense of involuntary manslaugh-

ter. Certain *undisputed* facts are essential in that respect:[1] (a) the brutal nature of the attack as it is inferred from its immediate consequences, the rupture of two vital organs as the spleen and the kidney, (b) the dissimilarity in the physical contexture between the aggressor and the victim, who was described as weak and undernourished, (c) the defenselessness of the person assaulted and the evident disregard for the security of a fellow-creature. All these elements put together indicate the commission of an injurious intentional act, without just cause or excuse. The circumstances of *Figueroa, supra*, in which the act of attack—to strike a blow to a healthy adult, that knocked him down and the fall to the pavement caused him the fracture of the skull—was compatible with the lack of malice and homicidal intent, are not present herein.

■ It is not, as appellant suggests, a question of the usurpation by the judge of the power of the jury to determine whether or not malice exists; it all boils down to the fact that the evidence did not justify the instructions on involuntary manslaughter because the set of facts presented—the brutal attack on a defenseless woman—is compatible only with the crime of murder. *People* v. *Tufiño Cruz,* 96 P.R.R. 219 (1968).

■ (2) Appellant complains of the failure of the trial judge to transmit instructions to the jury about the purpose and the quality of the expert testimony. He refers specifically to its importance in this case by presenting it as one in which there was conflict between the pathologist who performed the autopsy and the physician presented by the defense. This contention loses all transcendency when we observe that the latter —who did not have the opportunity to examine well the victim while alive or her corpse—admitted that peritonitis may occur as a consequence of a blow "if there is rupture of some internal organ." Also the court clearly indicated to the jury

---

[1] The defense's theory was that the blows received by the deceased were the result of a fall in the home, without any criminal act on the part of the defendant being involved.

that the opinion of an expert, if believed by the jury, can be used as a basis to consider a fact as proved. *People* v. *Sánchez*, 79 P.R.R. 110 (1956) does not have the scope attributed to it; it merely sets forth that when the credibility of an expert challenges the credibility of another expert, it is incumbent upon the jury to determine which testimony to believe. This is nothing more than an application of the general rule about weighing of oral evidence.

■ (3) It is alleged that the verdict is contrary to law because the corpus delicti had not been established. This contention is based on the ground that the testimony of the pathologist did not clearly establish the fact of the death, and the cause of the peritonitis that eventually culminated in the victim's death.

It is true that the medical examiner stated that the death could have occurred as a result of various causes: a blow, a fall or a bruising blow with some metal object. But this statement cannot be detached from the rest of the evidence which we have already summarized at the beginning of this opinion. The jury was completely justified in inferring that the blows given by appellant to his wife were the direct cause of her death.

■ (4) It is finally alleged that the jury was not properly instructed on the only purposes for which a sworn statement made before the prosecuting attorney by a minor daughter of the victim was admitted. We do not agree. They were expressly told that the statement had been presented "in order to impeach the credibility of this little girl. That only for that purpose can it be considered by you, to determine whether what she said here is true" and continued on other analogous considerations. See, *People* v. *Vega Román*, 92 P.R.R. 658, 664 (1965).

The errors assigned not having been committed, the judg-

ment rendered by the Superior Court, Bayamón Part, on August 31, 1965 will be affirmed.

Mr. Justice Santana Becerra did not participate herein.

